### JOSEPH ROBINSON *v.* M. J. MOTLEY, ET AL.

**Redemption from Judicial Sale.**

A person who buys in the land of another at a judicial sale, and who prevents creditors from redeeming it by agreeing to sell enough of the land to repay himself and then turn the balance of it over to the other creditors, cannot be permitted to hold all of the land and thus defeat the claims of the other creditors. Equity will decree a resale of the land to satisfy the claims of creditors after the first purchaser has been repaid.

APPEAL FROM WARREN CIRCUIT COURT.

October 8, 1878.

OPINION BY JUDGE ELLIOTT:

It may be assumed that on the 17th of July, 1877, J. H. Hayes was indebted to the appellee, Thomas, in the sum of $452.94; to the appellee, White, in the sum of $616.80; and to the appellee, Motley, in the sum of $1,337.99, subject to a credit of the same date of $76, because the court so adjudged in this suit, and there is no appeal by Hayes from that judgment. It may also be assumed that these claims were due to the appellees on the 26th of January, 1874. In December, 1873, J. H. Hayes' land was sold at execution sale and purchased by Wm. Garrison at the price of $50. Afterward the equity of redemption of the same tract, being the home farm of 304½ acres, was levied on to satisfy various executions by the sheriff of Warren county, and was sold on the 26th of January, 1874, and appellant Robinson became the purchaser at the price of $1,701. The sale was made for cash in hand, and appellant thereupon paid the $50 that had been bid by Garrison and the amount bid by himself for the land, making in all $1,751.

There can be no doubt but that appellant, at the time he purchased, did it at the solicitation of Hayes, the debtor, and to befriend him, and under the belief that Hayes would be able to redeem the land before the expiration of the time for redemption; but there is no positive evidence that appellant bought the land in for

Hayes. The appellant and Hayes both swear that there was no such arrangement.

After appellant's purchase appellees became uneasy about their claims and the financial condition of Hayes, and, they say, obtained an agreement from him that if he found himself unable to redeem the lands purchased by appellant within one month after the expiration of the time allowed for redemption he was to notify appellees, White and Motley, and permit them to redeem for him, so as to make his land liable for their claims and for the $1,756, which was required to redeem it. Accordingly some time before the expiration of the time for redemption White applied to Hayes to ascertain his ability to redeem the land, and on information of his inability informed him that he could and would raise the money to redeem it, to which Hayes assented and promised to see appellant upon the subject.

White also proves that he took a Mr. Jordan to look at the land, with a view to a purchase, and that Jordan offered Hayes $6,000 for the land that Robinson had bought under execution sale, and that Hayes refused to take it. White and Motley prove that they raised the money to redeem the land as had been agreed on between them and Hayes, and would have done so but for the delusive promises made to them by both Robinson and Hayes.

They prove that sometime before the expiration of Hayes' right of redemption White had a conversation with appellant, Robinson, and informed him that Hayes was largely indebted to him and Motley and Thomas, and that they were going to pay the amount which he paid on the execution sale of Hayes' land and redeem it. Whereupon Robinson told him that he need not put himself to that trouble, and that he did not intend to keeep the land at the price bid, and that he would sell enough of the land to repay himself the amount bid by him and ten per cent. interest, and then the balance should go to pay White and Motley.

White communicated this conversation to Motley, who doubted Robinson's inclination to comply with his promise; and when Robinson was so informed by White he went to Motley and invited him to go home with him, and then and there promised to waive the time for redemption of Hayes' land, and agreed to hold it as a lien for what he had paid for it and ten per cent. interest, and to sell enough for that purpose, and the remainder was to be sold and the proceeds applied to the payment of the claims of the appellees. Rely-

ing on these promises the land was not redeemed within the year, and at its expiration appellant obtained the sheriff's deed, and on application of Motley to redeem he told him he had the sheriff's deed, which he regarded as a good title, and if he doubted his title to "ride in."

We are of opinion that when Robinson bought the land he bought it as the friend of Hayes, and expecting him to redeem, but without any fraudulent purpose to shield it from Hayes's creditors; but we are also of opinion that by his promises to White and Motley he prevented Hayes from redeeming the land through them as had been agreed on, and, as Robinson swears that by a title bond executed in 1875 he attempted to vest the title of the land, after payment to him of what Hayes owed him, in trust for the use of Hayes' children, it may be inferred that after his purchase at the execution sale he may have determined to hold the land as a security for Hayes' indebtedness to him, and, subject to such indebtedness, held it for Hayes' children instead of his creditors. At any rate we are of opinion that Robinson ought not to be permitted to keep this land over the promises made by him and Hayes as against the appellees, and having waived time and agreed that appellees might redeem after the expiration of the year they should be permitted to do so still.

But the court most certainly erred to appellant's prejudice by ignoring his plea for the amount bid by him at the execution sale for the land. There is no denial by the appellees that the sale was a fair one for debts that Hayes actually owed; indeed, the appellee, White, bid the land off, and at his solicitation Robinson took his place as purchaser and paid the money.

There was no fraud in this transaction, and as appellant paid the debts that Hayes actually owed and upon which honest liens had been acquired by execution, we cannot see why Robinson should not have full remuneration by the payment to him of the $1,756 paid by him on his purchase of the land with ten per cent. interest from the time of payment.

The appellees come into a court of equity asking to be permitted to carry out an agreement to redeem the land, and they must be required to do equity before they can have relief, and the equity to which appellant is entitled is the payment of the amount paid by him on his purchase and ten per cent. interest thereon for one year from the day of his purchase, and this sum should be paid into court, and upon its payment the appellants should have judgment for a sale of

the land to pay the sum required to redeem the land, and also in satisfaction of their judgment against Hayes.

Wherefore the judgment is reversed and cause remanded for further proceedings consistent with this opinion.

*J. W. & Geo. R. Gorin, for appellant.*

*J. H. & J. M. Wilkins, J. H. Rose, for appellees.*

